UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

SHANE HARRINGTON,

                            Plaintiff,

            - versus -

THE NEBRASKA LIQUOR CONTROL
COMMISSION, THE CITY OF LINCOLN
NEBRASKA , A MUNICIPAL
CORPORATION, and TOM CASADY,
JIM PESCHONG, JOHN SPATZ, RUSSELL
FOSLER, and HOBERT RUPE, individually,
and in their official capacities as employees of
the City of Lincoln and the State of Nebraska,

                            Defendants.

Case No.

## COMPLAINT

Plaintiff Shane Harrington, by his undersigned attorneys, files this Civil Rights lawsuit against Defendants.  This action arises primarily out of the persecution of Plaintiff for exercising his First Amendment rights, and includes Due Process violations, Equal Protection Violations, harassment, defamation, invasion of privacy, tortious interference, and other unlawful conduct on the part of government entities and individuals who abused their powers under the color and authority of law in violation of the Constitution and the laws of the United States and the State of Nebraska.

## INTRODUCTION

1.      This action arises out of the wrongful denial of Plaintiff's liquor license for the night club Smooth located at 1640 O Street in Lincoln, Nebraska and the wrongful persecution of Plaintiff for exercising his First Amendment rights.

2.      Plaintiff is a native of Nebraska and a respected member of the business community with family, friends, and business associates throughout the State.

3.      On January 20, 2005, Plaintiff founded a web design and internet modeling company called MelTech, Inc., which was incorporated and operated from the State of Nebraska.

4.      One of its web sites, www.MelissaMidwest.com became an overnight success, generating millions of dollars in revenue from 2005 to 2009.

5.      The web site is an adult entertainment site characterized in the industry as "soft core porn" and more particularly, regarded as an "individual" site.

6.      If pornography were rated on the Motion Picture Academy scale, Plaintiff's web sites would be rated "G" for General Audiences as the content is primarily non-pornographic and the nude photographs and video are of the mildest sort when compared to the vast majority of pornographic content on the internet. (MelTech's content is in the vein of Playboy or Perfect 10)

7.      During its ten years of operation, MelTech never received any complaints from local, state, or federal authorities claiming that Plaintiff's content was obscene or illegal, Plaintiff's corporation has paid taxes in the State of Nebraska and Federal Income Taxes since 2005, and Plaintiff's corporation is in good standing with the Secretary of State.

8.      Despite never receiving any complaints, Plaintiff has, for no reason, been wrongfully harassed by Defendants in violation of his constitutional rights since founding his company in 2005, including being harassed by local law enforcement without probable cause, being followed by the members of the Lincoln Police Department or their agents throughout the City of Lincoln, and being held under audio and/or video surveillance by the Lincoln Police Department and other governmental entities.

9.      Plaintiff estimates that Defendants have spent hundreds of hours in unlawful surveillance of Plaintiff, creating a comprehensive file on Plaintiff that was referred to as "The Book" during the licensing hearing.  "The Book" is essentially a diary of the Defendants' witch hunt, including the names of informants and spies who monitored and recorded the activities of not only Plaintiff, but also his friends, family and associates over the past decade.

10.     After several years of this unlawful harassment, Plaintiff decided that he would open a night club in Nebraska with the intention of closing his online adult entertainment company as soon as the night club was profitable.

11.     Thereafter, Plaintiff leased property in Lincoln at 1640 O Street with the realistic expectation of opening a night club with a liquor license which would sell, among other things, an original vodka brand created by Plaintiff called Smooth Vodka (Club Smooth business plan attached as Exhibit "A" - Smooth Vodka business plan attached as Exhibit "B") .

12.     Plaintiff worked from 80 – 100 hours per week for over two years to make the club a success, often sleeping at the club, thus neglecting his business MelTech, Inc. during this period. As a result, Plaintiff lost hundreds of thousands of dollars in revenue from MelTech, Inc. while spending hundreds of thousands of dollars on lease payments, renovations, and other expenses for Club Smooth.

13.     After making this tremendous investment of time and money into the night club, Defendants denied Plaintiff a liquor license based upon arbitrary and unreasonable reasons through an unfair and unreasonable application process and hearing conducted by the City Council whose decision was confirmed by the State Liquor Commission.

14.     During the application process, the Nebraska Liquor Commission informed Plaintiff that only misdemeanors within the past five years and/or felonies and DUI's would be considered in the application, yet Plaintiff's application was denied due to minor unrelated events that occurred 12-plus years earlier when Plaintiff was a teenager and as a result of Plaintiff's ownership and operation of adult entertainment web sites, which were unrelated and irrelevant.

15.     During the application process, City Council Chair John Spatz wrote Plaintiff an email claiming his liquor license application would stand a better chance if he sold his web sites first, followed by an announcement to the media about the sale.

16.     Police Chief Jim Peschong wrote Plaintiff an email during the application process stating that Plaintiff's application for a liquor license would only be considered if he changed everything about himself for a period of three years, ostensibly meaning that Plaintiff would have to close his business, MelTech, not work in the adult entertainment industry, and/or anything else that may be implied from such a statement.

17.     At the licensing hearing, the State of Nebraska and City of Lincoln displayed a file ("The Book") which contained years of unlawful surveillance, not only of Plaintiff, but also his family, friends, and business associates.  (Some of the content of this file, along with other evidence, indicates that Defendants' have also tapped Plaintiff's phone without a warrant)

18.     In addition, Defendant Tom Casady falsely testified at Plaintiff's hearing before the Lincoln City Council about how content posted on Plaintiff's site was illegal even though no content posted on Plaintiff's web site was in fact illegal; Defendant Tom Casady's false public proclamation contributed to Plaintiff's denial of his liquor license application.  Further, Casady's false testimony was subsequent to Casady himself telling Plaintiff, before Plaintiff ever even leased the club, that if he, Plaintiff, followed the law he would have no problem getting a liquor license.

19.     Defendant Casady's false testimony was, upon information and belief, referring to Ordinance No. 17730 which states:

"9.16.230 Public Nudity; Unlawful.
(a) It shall be unlawful for a person to, knowingly or intentionally, in a public place or in any place open to the public, appear in a state of nudity. (b) 'Nudity' means the showing of the human male or female genitals or pubic area with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering on any part of the nipple, or the showing of covered male genitals in a discernibly turgid state.(c) *This section shall not apply to*: (1) Any theater, concert hall, art center, museum, or similar establishment which is primarily devoted to the arts or theatrical performances and in which any of the circumstances contained in this section were permitted or allowed as part of such art exhibit or performance; (2) Any dressing/changing room or restroom facility open to the public; (3) Any person under twelve years of age; or (4) Mothers who are breast feeding. (Emphasis added)

20.     Since the internet is not a "public place" within the meaning of this ordinance, no content from Plaintiff's web site violated the statute (if Plaintiff's photographs were to violate this ordinance, then technically all nude photographs on the internet would be in violation of this statute).

21.     The Nebraska Liquor Commission hearing itself was unreasonable, unfair, arbitrary and denied Plaintiff due process.  Demonstrative of Plaintiff's denial of due process is the fact that Defendants failed to ask Plaintiff's general manager a single question, and how one of the three Nebraska Liquor Commission members fell asleep for approximately 20 minutes during the hearing.

22.     Attorneys and other individuals who witnessed the proceedings claimed that Plaintiff was held to a much higher standard than anyone else who applies for a liquor license, and that Plaintiff's license was denied on unconstitutional grounds.

23.     In fact, the Order from the Nebraska Liquor Control Commission dated September 26, 2012 (attached as Exhibit "C") granted a liquor license at the same address to a subsequent applicant David Bader, despite the fact that Mr. Bader had a prior criminal record for driving under the influence of alcohol in May 2004 and making a false statement to a police officer in August 2002.  This September 26, 2012 order also illegally and unconstitutionally provides that, "Shane Harrington and Brandy Kroesee (Smooth's general manager) be barred from the premises."  Ironically, though Defendants granted Bader a liquor license, he had insufficient funds to purchase and operate the club, which is now owned and operated by yet a third party.

24.     During the hearing before the Nebraska Liquor Commission Control City, which lasted approximately three hours, Defendants broadcast approximately 50 nude photographs of Plaintiff's ex-wife to embarrass and harass Mr. Harrington, despite the fact that these photographs had nothing to do with obtaining a liquor license and despite the fact that they did not have legal authority or permission to broadcast these photographs to the public.

25.     This hearing was worse than a mere denial because Plaintiff was abused, belittled, and demeaned for hours in a public forum when Defendants never had any intention of granting the license under any circumstances in the first place.

26.     Such conduct by Defendants constitutes an abuse of discretion and a denial of due process and equal protection, resulting in financial damages as well as severe emotional and mental distress.

27.     In addition, after Plaintiff's liquor license application was denied, Defendants told Plaintiff's attorney and former Nebraska State Senator Colby Coash that the only way they would approve a sale of the business Smooth would be if payment were made to Plaintiff in full at the time of sale.  This directive included the prohibition of a payment plan of any sort despite the fact that Defendants allow other businesses in Lincoln (including night clubs) to be bought and sold with payment plans.  Defendants also stated that any new buyer would have to establish that no portion of the purchase price was paid by Plaintiff and that any purchaser could not be a relative, friend, or associate of Plaintiff.  As a result of the aforementioned discriminatory conditions imposed by Defendants, Plaintiff was forced to give away Club Smooth without consideration to a third party after his liquor license application was denied.

28.     As a result of the foregoing, Plaintiffs has suffered hundreds of thousands of dollars in out of pocket losses, including lease payments, renovations, improvements, promotions and other expenses, an estimated $500,000 in sweat equity for thousands of hours of work performed in vain, approximately $1.5 million in expectation damages to date, emotional and mental distress in amount to be determined at trial, as well as damages to Plaintiff's reputation and hundreds of thousands of dollars in lost earnings to MelTech, Inc.. Due to the intentional and egregious nature of Defendants' conduct, Plaintiff also demands $25 million in punitive damages to punish the Defendants and deter such conduct in the future.

## DEFENDANTS' HISTORY OF UNCONSTITUTIONAL CONDUCT

29.     Plaintiff has discovered numerous cases where the Nebraska Liquor Commission has denied liquor license applications to business owners in an "arbitrary and unreasonable" manner, including those listed below, demonstrating that it is their custom and practice to act in an unconstitutional manner.

30.     "The actions of the commission and the district court in denying the application were based on the prohibition contained in §§ 53-124.02 and 53-124.03, which we have now declared to be unconstitutional." Casey's Gen. Stores, Inc. v Nebraska Liq. Control Com'n, 220 Neb 242, 246, 369 NW2d 85, 88 [1985]

31.     "Commission may consider the recommendation of the local governing body in determining whether or not to issue such license, the burden is not on the applicant to provide evidence of such recommendation...the order of denial was ***arbitrary and unreasonable***." Kerrey's v Nebraska Liq. Control Com'n, 213 Neb 442, 445, 329 NW2d 364, 366 [1983] (emphasis added)

32.     "Hy-Vee also presented evidence to the city council, including petitions signed by 657 citizens, which had been gathered over a two-day period and supported issuing the licenses... The court, after reviewing the proceedings before the city council and commission, held that Lincoln's recommendation had been ***arbitrary and unreasonable***. The court further held that the commission's adoption of that recommendation was also unreasonable and an abuse of discretion. The court thus ordered the commission to issue the four licenses to Hy-Vee." Hy-Vee Food Stores, Inc. v Nebraska Liq. Control Com'n, 242 Neb 752, 754, 497 NW2d 647, 649 [1993](emphasis added)

33.     "Lincoln's ***arbitrary*** recommendation of denial does not justify denial of B & R's otherwise valid licenses. See *Hy-Vee, supra.* We therefore affirm the district court's reversal of

the commission and its order that the licenses be issued to B & R.  B & R Stores, Inc. v Nebraska Liq. Control Com'n, 242 Neb 763, 768, 497 NW2d 654, 657 [1993] (emphasis added)

34.     "The fact that beer may be purchased elsewhere in the general area of the location in question is not, in and of itself, a lawful justification for refusing to grant a license, for even in the area of liquor control, a justification for classification must exist; purely **arbitrary** treatment cannot be sustained." Gas 'N Shop, Inc. v Nebraska Liq. Control Com'n, 241 Neb 898, 905, 492 NW2d 7, 12 [1992] (emphasis added)

35.     "In  *Joe and Al's IGA, Inc. v. Nebraska Liquor Control Commission,* 203 Neb. 176, 277 N.W.2d 693 (1979), where from the record we determined there was no valid reason for the commission's denying the application for a retail package liquor license for a grocery store, and its action was therefore **arbitrary** and **unreasonable,** we affirmed the judgment of the district court reversing the order of the commission and directing that the license be issued. We think the record supports a similar result in these cases. The judgment of the district court in each case is reversed and the cause remanded with directions to enter a judgment in each case **ordering the commission to issue the license applied for by the plaintiff**." Gas'N Shop, Inc. v Nebraska Liq. Control Com'n, 229 Neb 530, 541-42, 427 NW2d 784, 791 [1988] (emphasis added)

36.     "The **action** of the Nebraska Liquor Control Commission in **denying the license** and the action of the District Court affirming its denial are **reversed** and remanded with directions to issue the license in accordance with applicable laws." Bond v Nebraska Liq. Control Commn., 210 Neb 663, 668, 316 NW2d 600, 603 [1982] (emphasis added)

37.     "From an examination of all the evidence there does not appear to be any valid reason for the Commission denying this application, and its action is therefore **arbitrary** and **unreasonable**." Joe and Al's IGA, Inc. v Nebraska Liq. Control Commn., 203 Neb 176, 183, 277 NW2d 693, 697 [1979] (emphasis added)

38.     "(T)he order of denial was **arbitrary** and **unreasonable.**... The District Court was entirely correct in setting aside the order of denial. Under the facts here, however, on remand the commission should have been directed to issue a license to the applicant in the manner provided by law as a matter of course. Hadlock v Nebraska Liq. Control Commn., 193 Neb 721, 728, 228 NW2d 887, 892 [1975] (emphasis added)

39.     "There is no question the District Judge, on the record from the commission and additional evidence adduced, determined that the action of the Nebraska Liquor Control Commission in assessing the maximum penalty was **arbitrary** and **unreasonable**." Eleven Eighteen Co. v Nebraska Liq. Control Commn., 191 Neb 572, 574, 216 NW2d 720, 721 [1974] (emphasis added)

40.     "The court concluded that since the record did not reflect any basis for the Commission to require the long-form application, the Commission's action was **arbitrary** and **unreasonable**." Grand Is. Latin Club, Inc. v Nebraska Liq. Control Com'n, 251 Neb 61, 65, 554 NW2d 778, 780 [1996] (emphasis added)

41.     "A member of the Lincoln Police Department testified that the proposed licensed location was already a heavily traveled area. He therefore concluded that the issuance of the license would create even more traffic problems. There was, however, no evidence to support that conclusion... Therefore, we cannot say that the commission was in any manner arbitrary in granting the license." City of Lincoln v Nebraska Liq. Control Commn., 208 Neb 630, 636, 304 NW2d 922, 926 [1981]

42.     "(D)istrict court held that the findings of the commission … were therefore **arbitrary and capricious**. The commission was ordered to issue the three licenses to CIMA. The district court correctly reversed the decisions of the commission." Contemporary Indus. Mid-Am., Inc. v Nebraska Liq. Control Com'n, 243 Neb 345, 351, 500 NW2d 525, 529 [1993] (emphasis added)

43.     "The record does not indicate a legitimate reason for denying Kwik Shop the requested licenses. We therefore reverse, and remand to the district court with directions that the licenses be issued." <u>Kwik Shop, Inc. v City of Lincoln</u>, 243 Neb 178, 194, 498 NW2d 102, 112 [1993]

44.     "The evidence before us does not support a legitimate reason for denying U-Stop its requested licenses. We therefore reverse, and remand to the district court with directions that the licenses be issued." <u>Whitehead Oil Co. v City of Lincoln</u>, 243 Neb 312, 319, 498 NW2d 793, 797 [1993]

45.     "Because the Commission reached its decision based upon an issue not identified in the notice sent to the Lariat Club, the Lariat Club was ***denied due process***, and we reverse, and remand with directions." <u>Lariat Club, Inc. v Nebraska Liq. Control Com'n</u>, 267 Neb 179, 180, 673 NW2d 29, 31 [2004] (emphasis added)

46.     Clearly, the Nebraska Liquor Control Commission has a history of unconstitutional conduct, and should be held accountable in the present action.

## <u>CITY OF LINCOLN'S HISTORY OF UNCONSTITUTIONAL CONDUCT</u>

47.     Defendant the City of Lincoln, including the City of Lincoln Police Department and the Lincoln City Council have engaged in unconstitutional conduct, free speech violations, discriminatory conduct, racial persecution, and other civil rights violations for decades as demonstrated by the following lawsuits.

48.     "The Ordinance has, as a practical matter, only two provisions of substance, and Linc–Drop has established that both of them are more than likely unconstitutional. Accordingly, the Court will enjoin enforcement of the Ordinance in its entirety... ***The Ordinance is, in fact, so plainly contrary to U.S. Supreme Court precedent that the Court is somewhat surprised the case has reached this juncture.***" <u>Linc-Drop, Inc. v City of Lincoln</u>, 4:13-CV-3133, 2014 WL 595545 [D Neb Feb. 18, 2014] (emphasis added)

49.     "Beginning in 1971, when the plaintiff began his employment with the Lincoln Police Department, he has experienced in the workplace racial slurs, jokes, comments, and cartoons... such as plaintiff's Exhibit 12, implying that a white man with a long black dildo and a shoe-polished face will be a sure attraction to black women. From time to time racially offensive cartoons appeared on bulletin boards in the police headquarters and substations...The frequency of these slurs, remarks, jokes and cartoons is not capable of precise determination, but I find that it was and is sufficient to have caused a hostile work environment, whereby the emotional well-being of the plaintiff as an employee was significantly and adversely affected." Ways v City of Lincoln, 705 F Supp 1420, 1421-22 [D Neb 1988] affd in part, revd in part, 871 F2d 750 [8th Cir 1989]

50.     "(T)he City's failure to grant DSN's proposed accommodation constituted an act of discrimination within the meaning of the Fair Housing Amendments Act, the Rehabilitation Act of 1973, and the Americans with Disabilities Act, and judgment should be entered in favor of DSN and against the City of Lincoln... Judgment shall be entered by separate document in favor of plaintiff Developmental Services of Nebraska and against the City of Lincoln in the amount of $331,928." Dev. Services of NE v City of Lincoln, 504 F Supp 2d 714, 726 [D Neb 2007]

51.     "Plaintiff alleges Defendants City of Lincoln and the Lincoln Police Department "engaged in a policy and practice of inadequate screening for suitability of employment and supervision of it's [sic] officers." (Id. at CM/ECF p. 3.) Plaintiff alleges this practice enabled officers to use excessive force during Plaintiff's arrest... Plaintiff also alleges this practice was the moving force behind his injury, and that the municipality's policy-making officials received notice of the misconduct but were deliberately indifferent... Plaintiff alleges that because of his race he was "singled out" and prosecuted based on conduct for which other "similarly situated" individuals were not prosecuted. Further, Plaintiff alleges Defendants are liable for assault, false arrest, false imprisonment, intentional infliction of emotional distress, defamation, and malicious

prosecution." <u>Mann v City of Lincoln, Neb.</u>, 8:08CV431, 2008 WL 5423885 [D Neb Dec. 30, 2008]

52.     "Warren filed this section 1983 action against the City and (three) Officer(s)... The complaint alleged that the police officers, pursuant to police department policy, violated Warren's constitutional rights by arresting him without probable cause on April 13, 1985, taking him to the police department, falsely imprisoning him, subjecting him to harassing, crude, and lengthy interrogation without granting his request for counsel, fingerprinting him, and photographing him numerous times. The complaint further alleged Warren suffered severe emotional distress, mental pain, and psychological damage as a result of the intentional acts of the defendants." <u>Warren v City of Lincoln, Neb.</u>, 816 F2d 1254, 1256 [8th Cir 1987] <u>on reh,</u> 864 F2d 1436 [8th Cir 1989]

53.     "On July 15, 2009, White filed a three-count complaint against the defendants ... titled "42 U.S.C. § 1983—Malicious Prosecution, False Arrest, Use of Unreliable and Fraudulent Investigatory Techniques, Procurement of Unreliable and Fabricated Evidence," alleges that the defendants 1) purposefully brought about the plaintiff's illegal arrest, prosecution, and conviction, although they knew or should have known of his innocence; 2) "solicited, fabricated, manufactured and coerced evidence that was demonstrably unreliable, misleading, false," and inconsistent with the "known immutable evidence of the Wilson homicide"; 3) unreasonably seized the plaintiff in violation of the Fourth and Fourteenth Amendments; 4) deprived the plaintiff of his liberty without due process of law in violation of the Fifth and Fourteenth Amendments; 5) deprived the plaintiff of his right to a speedy public trial by an impartial jury in violation of the Sixth and Fourteenth Amendments; and 6) deliberately inflicted cruel and unusual punishment upon the plaintiff in violation of the Eighth and Fourteenth Amendments." <u>White v Smith</u>, 4:09CV3145, 2009 WL 3335967 [D Neb Oct. 14, 2009]

54.     "(F)ormer firefighters for the City of Lincoln (City), filed claims with the City requesting a return of their pension contributions. The City denied their claims... The firefighters contend that the City's actions … violate their right to equal protection and deprive them of property without due process of law contrary to the 14th Amendment to the U.S. Constitution." Bauers v City of Lincoln, 245 Neb 632, 637, 514 NW2d 625, 628-29 [1994]

55.     Clearly, the City of Lincoln and the Nebraska State Liquor Commission have a history of unconstitutional conduct and should therefore be held accountable for compensatory and punitive damages for their actions in the present case.

## PARTIES

56.     Plaintiff is a resident of the State of Nebraska.

57.     Defendant the Nebraska Liquor Commission is a division of the State of Nebraska that regulates the liquor licensing process.

58.     Defendant the City of Lincoln is a municipal corporation founded in Nebraska that operates the Lincoln Police Department and the City Council under color of law.

59.     Defendant Tom Casady is the former Chief of Police of the Lincoln Police Department.

60.     Defendant Jim Peschong is the current Chief of Police of the Lincoln Police Department.

61.     Defendant Russell Fosler is a police officer employed by the Lincoln Police Department.

62.     Defendant John Spatz is a former City Council Chairman of the City of Lincoln.

63.     Defendant Hobert Rupe is the Nebraska Liquor Control Commission's Executive Director.

## JURISDICTION

64.     This court has jurisdiction pursuant to 42 U.S.C. §§ 1983 and 1985, under the First, Fifth, and Fourteenth Amendments and other related causes of action.

## VENUE

65.     Venue is appropriate in the District of Nebraska as the parties and events in dispute arose within the State of Nebraska.

## FEDERAL CAUSES OF ACTION

## SECTION 1983 – CIVIL ACTION FOR DEPRIVATION OF RIGHTS

66.     Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## FIRST CAUSE OF ACTION

## FIRST AMENDMENT VIOLATIONS

67.     Plaintiff was wrongfully denied a liquor license by Defendants as a result of lawfully exercising his First Amendment rights.

68.     Plaintiff is the CEO of MelTech, Inc., a Nebraska corporation founded on January 20, 2005 for web design and internet modeling.

69.     Overnight, Plaintiff's web sites became a worldwide success, grossing millions of dollars in its first years of operation.

70.     These web sites were and are entirely legal, and are protected speech under the First Amendment of the United States Constitution.

71.     However, as a result of Plaintiff exercising his First Amendment rights, Defendants have harassed and defamed Plaintiff and wrongfully denied him a liquor license, resulting in the aforementioned damages.

## SECOND CAUSE OF ACTION

## FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS VIOLATIONS

72.      Plaintiff re-alleges every paragraph set forth above as though set forth herein.

73.     Under the Federal and Nebraska State Constitutions, Plaintiff is entitled to Due Process of law with regard to the application for a liquor license.

74.     Generally, "[t]he exercise of discretion to grant or deny a license, permit or other type of application is a quasi-judicial function." *Sommerfield v. Helmick,* 57 Cal.App.4th 315, 320, 67 Cal.Rptr.2d 51, 54 (1997). See, also, *J K & J, Inc. v. Nebraska Liquor Control Commission, supra.* In *First Fed. Sav. & Loan Assn. v. Department of Banking,* 187 Neb. 562, 566, 192 N.W.2d 736, 739 (1971), <u>Stoneman v United Nebraska Bank</u>, 254 Neb 477, 484, 577 NW2d 271, 277 [1998]

75.     "Where an administrative body acts in a quasi-judicial manner, due process requires notice and an opportunity for a full and fair hearing at some stage of the agency proceedings." *Stoneman v. United Neb. Bank,* 254 Neb. 477, 577 N.W.2d 271 (1998); *City of Lincoln v. Twin Platte NRD,* 250 Neb. 452, 551 N.W.2d 6 (1996). <u>Troshynski v Nebraska State Bd. of Pub. Accountancy</u>, 270 Neb 347, 355, 701 NW2d 379, 386 [2005]

76.     The hearing held for Plaintiff was not "full and fair" and therefore violated his constitutional rights to due process.

77.     A fair hearing entitles one to notice and an opportunity to be heard.  Since Defendants spent the hearing abusing Plaintiff, including repeatedly questioning Plaintiff about his ex-wife's nude photographs, an issue that had nothing to do with obtaining a liquor license, Plaintiff did not receive a fair hearing.

78.     In addition, Defendants did not ask Plaintiff's manager a single question during the hearing and a member of the Commission fell asleep for approximately 20 minutes.

79.     Furthermore, the grounds for denying a liquor license application must be reasonable and founded on a rational basis to comport with due process.

80.     Therefore, Plaintiff requests compensatory and punitive be awarded for the denial of Due Process during the liquor license application process.

### THIRD CAUSE OF ACTION

### FOURTEENTH AMENDMENT EQUAL PROTECTION VIOLATIONS

81.      Plaintiff re-alleges every paragraph set forth above as though set forth herein.

82.     Defendants have denied Plaintiff equal protection of the law in violation of the Fourteenth Amendment of the U.S. Constitution by denying his liquor license based upon his ownership of an adult entertainment company, which is a fully legal commercial enterprise.

83.     Based upon Plaintiff's exercising his rights of free speech and association under the First Amendment, Defendants persecuted Plaintiff and denied him equal protection of the law.

84.     This is demonstrated by the fact that shortly after Denying Plaintiff a liquor license at 1640 O Street, Defendants granted a liquor license to David Bader at the same address, even though Mr. Bader was an applicant with criminal convictions for both DUI and making a false statement to a Police officer, *and* despite the fact that he had no money to purchase or operate the facility, which is now owned and operated by yet a third party.

85.     Clearly, Plaintiff was denied equal protection of the law as the Defendants denied Plaintiff a license while giving one at the same premises to a far less qualified applicant.

86.     This denial of equal protection of the law resulted in great financial losses as well as physical and emotional distress and damage to Plaintiff's reputation.

## FOURTH CAUSE OF ACTION

## PRIVACY VIOLATIONS OF FOURTH, NINTH, AND FOURTEENTH AMENDMENTS

87.     Plaintiff re-alleges every paragraph set forth above as though set forth herein.

88.     The Fourth, Ninth, and Fourteenth Amendments provide broad protections of Plaintiff's privacy interests that were violated by the Defendants.

89.     Defendants persecution of Plaintiff as described herein constitutes an invasion of privacy, including unlawful harassment, surveillance, (as demonstrated by creation and circulation of "The Book") and the unauthorized use of Plaintiff's ex-wife's photographs without consent in a public hearing.

90.     Plaintiff's company owns the exclusive license to the photographs of his ex-wife that were displayed by Defendants at a Nebraska Liquor Commission Control public hearing without permission to numerous people in attendance including attorneys for both parties and the local media.

91.     As a result of the foregoing invasions of privacy, Plaintiff has suffered compensatory and expectation damages, as well as severe emotional distress entitling Plaintiff to the damages requested herein.

## NEBRASKA STATE LAW CAUSES OF ACTION

## FIFTH CAUSE OF ACTION

## OPPRESSION UNDER COLOR OF OFFICE – Neb.Rev.St. 28-926

92.     Plaintiff re-alleges every paragraph set forth above as though set forth herein.

93.     (1) Any public servant or peace officer who, by color of or in the execution of his office, shall designedly, willfully, or corruptly injure, deceive, harm, or oppress any person, or shall attempt to injure, deceive, harm, or oppress any person, commits oppression under color of office, and shall be answerable to the party so injured, deceived, or harmed or oppressed in treble damages.

94.     (2) Oppression under color of office is a Class II misdemeanor. Neb Rev Stat § 28-926

95.     The individual Defendants' conduct of following, harassing and defaming Plaintiff (creating and circulating "The Book") and lying during the course of Plaintiff's liquor license application process violates Neb Rev Stat § 28-926, entitling Plaintiff to treble damages and warranting the criminal conviction of the individual Defendants for a Class II misdemeanor.

## SIXTH CAUSE OF ACTION

## ABUSE OF PROCESS – NEBRASKA STATE LAW

96.      Plaintiff re-alleges every paragraph set forth above as though set forth herein.

97.     The two elements necessary to establish an action for abuse of legal process under Nebraska law are: (1) the existence of an ulterior purpose and (2) an act in the use of the process not proper in the regular prosecution of the proceeding. Specifically, Plaintiff must "prove irregular steps taken under cover of the process after its issuance, and damage resulting therefrom." *Gordon v. Community First State Bank,* 255 Neb. 637, 587 N.W.2d 343, 351 (1998) Stagemeyer v County of Dawson, 192 F Supp 2d 998, 1010 [D Neb 2002]

98.     Defendants abused the liquor license application process by wrongfully denying Plaintiff without just cause for arbitrary and unfair reasons after giving Plaintiff every reason to believe that he would be granted the license.

99.     Defendants took irregular steps to avoid awarding Plaintiff a liquor license as a means of prosecuting him for exercising his first amendment rights through his adult entertainment and internet modeling company.

100.    Defendants also abused process by displaying private nude photographs of Plaintiff's ex-wife at a public hearing when they had no connection to the licensing application at issue.

101.    As a result of the foregoing, Defendants committed Abuses of Process, causing Plaintiff to sustain the damages claimed of herein, and requests punitive damages due to the extreme and outrageous nature of Defendants' conduct.

## SEVENTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

102.    Plaintiff re-alleges every paragraph set forth above as though set forth herein.

103.    The elements of tortious interference with a business relationship or expectation are: "(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." Huff v Swartz, 258 Neb 820, 825, 606 NW2d 461, 466 [2000]

104.    Plaintiff leased the property located at 1640 O Street in Lincoln Nebraska under the valid belief that he would be able to receive a liquor license. Defendants led Plaintiff to believe that he had every reason to expect obtaining the license.

105.    However, Defendants purposely sabotaged Plaintiff's attempt to obtain a liquor license and then barred Plaintiff from the premises after he was forced to relinquished his lease.

106.    During the time the club was open without a liquor license, Defendants interfered with business relations and contracts Defendant entered or attempted to enter with other businesses and individuals in the community of Lincoln, including contracts for catering and joint events with third parties.

107.    Plaintiff believes that his telephone was tapped without a warrant by the Defendants during this period because Defendants took actions based upon private information communicated by Plaintiff to third parties by way of his cellular phone.

108.    In addition, after denying Plaintiff's liquor license application, Defendants imposed restrictive and discriminatory conditions regarding the sale of the business Smooth by Plaintiff to any third parties, resulting in further economic losses.

109.    As a result of the foregoing, Plaintiff was damaged in the amount of hundreds of

thousands of dollars for lease payments, renovations, improvements, promotions and other expenses, as well as an estimated $500,000 in sweat equity, and approximately $1.5 million in expectation damages, plus damages to his reputation and lost profits from MelTech, Inc.

## EIGTH CAUSE OF ACTION

### DEFAMATION

110.   Plaintiff re-alleges every paragraph set forth above as though set forth herein.

111.   "Defamation is of two types. There are words that are actionable per se, that is, in themselves, or words may be actionable per quod, that is, only on allegation and proof of the defamatory meaning of the words used and of special damages. See *K Corporation v. Stewart*, 247 Neb. 290, 526 N.W.2d 429 (1995). Spoken or written words are slanderous or libelous per se only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit." *Matheson v. Stork,* 239 Neb. 547, 477 N.W.2d 156 (1991).   Hatcher v McShane, 12 Neb App 239, 245, 670 NW2d 638, 644 [Neb Ct App 2003]

112.   Plaintiff Shane Harrington is a highly respected member of the Nebraska community with an extended family of relatives encompassing several generations and friends throughout the state.

113.   Defendants falsely created rumors and made public statements regarding Plaintiff's character at the hearing and in public, including the false imputation of a crime of moral turpitude (false claim that Plaintiff posted illegal content on his web sites), falsely claiming that Plaintiff was unfit to obtain a liquor license, and otherwise libeling and slandering Plaintiff with regard to his personal and professional reputation.

114.    Such false statements include claims that Plaintiff lacked the "moral character" necessary to obtain a liquor license and that Plaintiff's web sites contained illegal content, all based without any substantiation.

115.    In addition, Defendants have created and circulated amongst themselves and to third parties a comprehensive Book that includes libelous statements about Plaintiff.

116.    As a result of the foregoing, Plaintiff was precluded from obtaining a liquor license, sustaining approximately $2.5 million in damages, plus damage to his reputation and lost profits from MelTech, Inc.

<u>**NINTH CAUSE OF ACTION**</u>

<u>**INVASION OF PRIVACY**</u>

117.    Plaintiff re-alleges every paragraph set forth above as though set forth herein.

118.    Defendant the City of Lincoln, and the individually named Defendants, have spied on Plaintiff, harassed him, followed him, pulled him over in his vehicle without cause, and otherwise invaded Plaintiff's privacy without probable cause or any reasonable justification.

119.    Defendants have created and developed a comprehensive file ("The Book") on Plaintiff without probable cause, including records of surveillance, informants, and the activities of Plaintiff, his friends, family, and associates.  This Book, containing confidential private details of Plaintiff's professional and personal life, has been circulated among the Defendants and shown to third parties.

120.    The use of nude photos of Plaintiff's ex-wife at that time of the licensing hearing by Defendants constitutes an invasion of privacy as these private images had nothing to do with the license in issue and were used by Defendants without Plaintiff's consent in a public forum.

121.    As a result of the foregoing, Plaintiff has suffered mental and emotional distress, entitling Plaintiff to compensatory and punitive damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## INFLICTION OF EMOTIONAL DISTRESS

122.     Plaintiff re-alleges every paragraph set forth above as though set forth herein.

123.     To recover for intentional infliction of emotional distress, a plaintiff must prove (1) intentional or reckless conduct (2) that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. See *Brandon v. County of Richardson,* 261 Neb. 636, 624 N.W.2d 604 (2001). Roth v Wiese, 271 Neb 750, 761, 716 NW2d 419, 431 [2006]

124.     Defendants' intentional outrageous conduct includes spying on Plaintiff, following Plaintiff, pulling Plaintiff's vehicle over without cause, (all documented in detail in "The Book") displaying Plaintiff's ex-wife's nude photographs at a public hearing, and lying and defaming Plaintiff throughout the liquor license application process.

125.     The creation and circulation of "The Book" amongst Defendants and to third parties is outrageous conduct that is intolerable in a civilized community.

126.     For approximately 2 ½ years, Plaintiff worked as much as 80 – 100 hours per week to make Club Smooth a success and spent nearly his entire life savings on the project, only to be denied a liquor license in an arbitrary and unreasonable manner, necessitating the closing of the club and the end of Plaintiff's dream.

127.     As a result of the foregoing, Plaintiff has suffered severe emotional and mental distress, including depression, entitling Plaintiff to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff requests the following relief from this court:

A)     Declaring that Defendants violated Plaintiff's First Amendment Rights;

B)     Declaring that Defendants violated Plaintiff's Due Process Rights;

C)     Declaring that Defendants violated Plaintiff's Equal Protection Rights;

D)     Declaring Defendants violated Plaintiff's right to privacy under the Federal Constitution and Nebraska State law;

E)     Declaring that Defendants violated Neb.Rev.St. 28-926;

F)     Declaring that Defendants engaged in an Abuse of Process;

G)     Declaring that Defendants Tortiously Interfered with Plaintiff's Business Relationships;

H)     Declaring that Defendants Defamed Plaintiff by libel and slander;

J)     Declaring that Defendants intentionally inflicted severe emotional distress upon Plaintiff and awarding damages;

K)     Granting Plaintiff compensatory damages in the amount of $2.5 million, punitive damages in the amount of $25 million, plus attorney's fees and the costs of this action.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

AUGUST 21, 2014

By: */S/ Hugh I. Abrahamson*

Hugh I. Abrahamson, #17902
Jill M. Abrahamson, #22582
Abrahamson Law Office
6901 Dodge Street, Suite 107
Omaha, NE  68132
Tel. 402.758.1222
Fax 402.758.1293
hugh.abrahamson@omahanelawyer.com
jill@omahanelawyer.com

Evan Spencer
Attorney at Law
305 Broadway, 14th Floor
New York, NY   10007
Tel. 347.931.1814
Fax 347.643.0245
Evan@EvanSpencerEsq.com

*Attorneys for Plaintiff*