IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SHANE HARRINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | 4:14CV3171 |
| | ) | |
| v. | ) | |
| | ) | |
| THE NEBRASKA LIQUOR CONTROL | ) | MEMORANDUM AND ORDER |
| COMMISSION, THE CITY OF | ) | |
| LINCOLN, NEBRASKA, a Municipal | ) | |
| Corporation, and TOM CASADY, | ) | |
| JIM PESCHONG, JOHN SPATZ, | ) | |
| RUSSELL FOSLER and HOBERT | ) | |
| RUPE, individually and in | ) | |
| their official capacities as | ) | |
| employees of the City of | ) | |
| Lincoln and the State of | ) | |
| Nebraska, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on two motions. Defendants Tom Casady, Jim Peschong, John Spatz, Russell Fosler, and the City of Lincoln filed their motion to dismiss (Filing No. 15) pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 20, 2014. As of the date of this memorandum and order, plaintiff Shane Harrington has not filed a responsive brief and the defendants have not, therefore, filed reply briefs.[1] In lieu of a response, Harrington has filed a motion to amend his

---

[1] Harrington brought claims against the Nebraska Liquor Control Commission and Hobert Rupe ("the Nebraska Defendants"), in addition to the other defendants. The Nebraska Defendants filed a motion to dismiss (Filing No. 13) but Harrington filed an unopposed motion (Filing No. 19) to dismiss the Nebraska Defendants, which the Court granted (Filing No. 21). Therefore the Court will deny Filing No. 13 as moot.

complaint a second time (Filing No. 17).  After review of the motions, briefs, and relevant case law, the Court finds as follows.

I.  BACKGROUND

Harrington is a entrepreneurial citizen of Nebraska who has amassed his wealth through an "internet modeling company" called MelTech, Incorporated ("MelTech").  Filing No. 4, at 1-2, ¶¶ 1-4.  MelTech started a website designed to monetize prurient interest.  *Id.* at 2, ¶¶ 3-6.  According to Harrington, the website is rather tame; he suggests that it deserves a "G" rating from the Motion Picture Academy.  *Id.* at 2, ¶¶ 3-6.

Following his success in the entertainment industry, Harrington wished to begin a night club in downtown Lincoln and applied for a liquor license.  *Id.* at 3, ¶¶ 10-12.  Before the hearing, a member of the Lincoln city council and the Lincoln chief of police both contacted Harrington by e-mail and admonished him that he would not receive the license unless he sold or closed MelTech.  *Id.* at 4, ¶¶ 15-16.  During the application process, Harrington understood that the Nebraska Liquor Commission would only investigate facts relating to misdemeanors within the last five years and felonies that Harrington might have on his record.  *Id.* at 3, ¶ 14.  The hearing did not proceed as Harrington expected.

Harrington lists the following examples of how he was denied his rights of due process. First, he claims that local law enforcement has harassed him ever since he began MelTech, including audio and video surveillance. *Id.* at 2-3, ¶¶ 8-9. In fact, the Lincoln Police amassed and compiled a comprehensive file on the activities of Harrington, his friends, and his family over the previous decade. *Id.* at 2-3, ¶ 9. The complaint refers to this file as "The Book," which was a term used by someone at the licensing hearing. *Id.* Second, Tom Casady, former chief of police of Lincoln, testified at the hearing that Harrington's website was illegal, which negatively affected the likelihood of his receiving the permit. *Id.* at 4-5, ¶¶ 18-21. Third, one of the three commissioners slept through part of the hearing. *Id.* at 5, ¶ 21. Fourth, Harrington alleges that the Commission barred him from the night club that he had leased. *Id.* at 5, ¶ 23. Fifth, the named defendants showed 50 nude photographs of Harrington's ex-wife during the hearing. *Id.* at 6, ¶ 24. Finally, the Commission denied his license which resulted in the failure of the business. Following denial of his liquor license, Harrington sold the night club. *Id.* at 6, ¶ 27. Harrington contends that the City of Lincoln imposed conditions upon the sale of the business that were unreasonable, such as not allowing

Harrington to sell it to any of his associates or family. *Id.* The hearings occurred on and before May 2011.

Harrington did not appeal the Commission's decision but he now seeks compensatory and punitive damages. Harrington estimates he spent $10,000 out-of-pocket start-up costs on the failed night club, expended $500,000 worth of "sweat equity," lost $1,500,000 in expectation damages of night club revenue because of the denial of the license, and lost hundreds of thousands more from diminished sales at MelTech due to damage to Harrington's reputation. *Id.* at 6, ¶ 28. Harrington asks for $25,000,000 in punitive damages. *Id.*

Harrington brings claims pursuant to 42 U.S.C. §§ 1983 and 1985 for violation of his First, Fourth, Fifth, Ninth, and Fourteenth Amendment rights. *Id.* at 13, ¶ 65. First, Harrington alleges that he was denied the liquor license for exercising his First Amendment right to operate his website. *Id.* at 15, ¶ 68-72. Second, Harrington alleges that the liquor license hearing was so outrageous that it denied him his right to Due Process pursuant to the Fifth and Fourteenth Amendments. *Id.* at 15-16, ¶ 73-81. Third, Harrington alleges that the denial of his liquor license on the basis of his ownership of an adult entertainment website is a violation of Fourteenth Amendment protection of Equal Protection, particularly in relation to others who have

received liquor licenses. *Id.* at 17, ¶ 82-87. Fourth, Harrington alleges that the Book, the events which surround the Book's construction by the Lincoln Police Department, and the unlicensed airing of his ex-wife's nude photos constitute a violation of his right to privacy pursuant to the Fourth, Ninth, and Fourteenth Amendments. *Id.* at 17-18, ¶ 88-92. Fifth, Harrington asserts Nebraska Revised Statute § 28-926, a criminal violation of "oppression under color of office," against the defendants. *Id.* at 18-19, ¶ 93-96. Sixth, Harrington alleges that the liquor license hearing was so outrageous that it constituted "abuse of power" under Nebraska state law. *Id.* at 19, ¶ 97-102 (citing *Gordon v. Community First State Bank*, 255 Neb. 637, 587 N.W.2d 343, 351 (1998); *Stagemeyer v. County of Dawson*, 192 F. Supp. 2d 998, 1010 (D. Neb. 2002)).[2] Seventh, Harrington alleges tortious interference with a business relationship. Filing No. 4, at 20-21, at ¶¶ 103-110. Eighth, Harrington alleges defamation of character under Nebraska law. *Id.* at 21-22, at ¶¶ 111-117. Ninth, Harrington alleges "invasion of privacy." *Id.* at 22-23, at ¶¶ 118-122. Tenth and finally, Harrington alleges that defendants' actions constitute infliction of emotional distress. *Id.* at 23, at ¶¶ 123-128.

---

[2] Harrington seeks punitive damages under a state law claim. Filing No. 1, at 19, at ¶ 101.

Harrington filed his complaint (Filing No. 1) on August 20, 2014.  Harrington filed an amended complaint (Filing No. 4) on August 21, 2014.  There is little difference between these complaints.  *Compare* Filing No. 1 (Pagination and paragraph 64), *with* Filing No. 4 (Pagination, paragraph 64, and three attachments).  Some three months later, during the pendency of the motion to dismiss and after Harrington failed to respond to the defendants' briefs, Harrington filed a motion to file another amended complaint.

II.  LEGAL STANDARDS

When determining whether to grant leave to amend a complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), the Court considers undue delay, bad faith, or dilatory motive by plaintiff that results in prejudice to the defendant.  *Foman v. Davis*, 371 U.S. 178 (1962); *Jenson v. Cont'l Fin. Corp.*, 404 F. Supp. 792, 794 (1975).  Leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, the granting of such a motion is left to the discretion of the Court.  *Russ v. Ratliff*, 578 F.2d 221, 224 (8th Cir. 1958).

The Court has an obligation to consider *sua sponte* whether it has subject matter jurisdiction over a case.  *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014).  The Court "must raise jurisdictional issues 'when there

is an indication that jurisdiction is lacking, even if the parties concede the issue.'" *Id.* (quoting *Thomas v. Basham*, 931 F.2d 521, 523 (8th Cir. 1991)). Suits are subject to dismissal when the Court lacks subject matter jurisdiction to hear the matter. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction bears the burden of proving that jurisdiction is proper. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id.* at 679. Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Accordingly, the Supreme Court has prescribed a "two-pronged approach" for evaluating Rule 12(b)(6) challenges. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court should divide the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be examined for facial plausibility. *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 677 (2007) (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully). A court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Id.* at 558, 556. When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* at 558; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III. DISCUSSION

A.   LEAVE TO AMEND

As outlined above, plaintiff has procrastinated in amending his complaint until well after the deadline to amend without leave of the Court and the deadline to respond to the defendants' motion to dismiss. The plaintiff offers two justifications. First, the plaintiff's local counsel may have had a potential conflict of interest which took time to investigate. Second, plaintiff's counsel was delayed by

discovery. The Court liberally grants extensions and amendments if parties but timely notify the Court of the need. This is not a request for an extension, however, but a justification of plaintiff's discretion not to communicate with the Court or abide by deadlines. The plaintiff's excuses were known well before he shared them with the Court. Now the Court is on the eve of disposition of pending motions and the plaintiff offers thin explanation for its unauthorized, unilateral, and undue delays. No more undue delay will be permitted. *See Beeck v. Aquaslide "N" Drive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977). The Court finds that the plaintiff has acted with undue delay and that it has failed to cure its deficiencies through previous amendment. In weighing the time lapse and the various motions pending in this action, the Court will deny plaintiff's motion to amend his complaint and will proceed to analyze the motion to dismiss. Furthermore, the plaintiff's request for an alternative ten-day extension to respond to the defendants' motion to dismiss will be denied.

B. CAUSES OF ACTION AS TO ALL DEFENDANTS

The Court first addresses four Causes of Action which apply to all defendants. In his Fifth Cause of Action, Harrington asserts that all defendants violated Nebraska Revised Statute § 28-926, a criminal statute, "oppression under color of

office." Filing No. 1, at 18-19, ¶ 93-96. Though the proposition of suing another under a criminal law statute for a civil remedy may seem like a novel idea, it is not untested. The United States District Court for the District of Nebraska and the Nebraska Supreme Court has seen this argument previously:

> Plaintiffs' Fifth Cause of Action attempts to allege a violation of Neb. Rev. Stat. Ann. § 28–926 []. This is a criminal statute which provides for treble damages if a public servant or peace officer commits the misdemeanor offense of "oppression under color of office." It is highly questionable whether section 28–926 authorizes a civil cause of action seeking treble damages to be brought under its provisions. *C.f. LaBenz Trucking, Inc. v. Snyder*, 246 Neb. 468, 519 N.W.2d 259, 261–62 (1994) (in case where plaintiffs waived recovery of treble damages and requested only actual damages under section 28–926, court held statute to be "penal in nature" and stated, "[a] statute which imposes liability for actual damages and additional liability for the same act exacts a penalty. Plaintiffs cite no authority, nor has our research discovered any, to support the proposition that a party may convert a purely penal statute into a remedial one simply as the election of the party."). I find that in this case, where Plaintiffs have specifically requested treble damages [], section 28–926 does not support a civil cause of action.

*Stagemeyer v. County of Dawson*, 192 F. Supp. 2d 998, 1011 (D. Neb. 2002). The United States District Court went on to dismiss the claim in its entirety. *Id.* For the foregoing reasons, the Court will grant the defendants' motion to dismiss Harrington's Fifth Cause of Action.

In his Sixth Cause of Action, Harrington claims that all defendants committed an abuse of process. Abuse of process requires involvement of a judicial process and Harrington's complaint involves no judicial process. In *Gordon v. Cmty. First State Bank*, the Nebraska Supreme Court held that an action for "abuse of process" must be predicated upon judicial, not administrative, process. *Gordon v. Cmty. First State Bank*, 255 Neb. 637, 651, 587 N.W.2d 343, 353 (1998). Harrington's complaint regards administrative process, not judicial process. For the forgoing reason, the Court will grant the defendants' motion to dismiss the Sixth Cause of Action.

In his Eighth Cause of Action, Harrington alleges defamation by all defendants on the basis of statements made in his administrative hearings and the contents of the Book. The statute of limitations for libel and slander is one year after the alleged conduct. Neb. Rev. Stat. § 25-208. The events in Harrington's complaint occurred in 2011. Harrington's complaint was filed in 2014. The statute of limitations has run.

Therefore, the Court will grant the defendants' motion to dismiss Harrington's Eighth Cause of Action.

In his Ninth Cause of Action, Harrington alleges invasion of privacy against all defendants based on the compilation of the Book and events at the licensing hearings. The statute of limitations for invasion of privacy is one year after the alleged conduct. Neb. Rev. Stat. § 20-211. The events in Harrington's complaint occurred in 2011. Harrington's complaint was filed in 2014. The statute of limitations has run. Therefore, the Court will grant the defendants' motion to dismiss Harrington's Ninth Cause of Action.

C.   THE CITY OF LINCOLN

In Harrington's complaint, he failed to allege that the City of Lincoln has an official custom or policy which caused a violation of Harrington's constitutional rights. *See generally* Filing No. 4. Therefore, the Court will grant the defendants' motion to dismiss Causes of Action One, Two, Three, and Four against the City of Lincoln. *See Lee v. Andersen*, 616 F.3d 803, 807 (8th Cir. 2010); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Doe By & Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998)).

The remaining Cause of Actions, Seven and Ten, are both tort claims. Under the Nebraska Political Subdivisions Tort

Claims Act, "no political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and . . . except to the extent . . . provided by the Political Subdivisions Tort Claims Act."  Neb. Rev. Stat. § 13-902.  The Political Subdivision Tort Claims Act does not allow for suit against municipal entities for the denial of a liquor license.  In fact, the Act expressly grants immunity for the denial of a liquor license.  Neb. Rev. Stat. § 13-910(4).  Because Harrington's claims against the City of Lincoln are based upon the denial of his liquor license, the Court will grant the defendants' motion to dismiss the final two remaining claims against the City of Lincoln.

D.  CITY COUNCILMAN SPATZ

The Court will grant the defendants' motion to dismiss all claims against City Councilman Spatz in his individual capacity on the basis of Qualified Immunity.  Qualified Immunity is immunity from suit rather than a mere defense to liability, and therefore, immunity issues should be resolved at the earliest possible stage of the litigation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Court determines whether qualified immunity exists by applying a two-step inquiry:  "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether the right was clearly

established at the time of the defendant's alleged misconduct." *Santiago v. Blair*, 707 F.3d 984, 989 (8th Cir. 2013). A key element of this analysis depends upon the objective reasonableness of his or her conduct as measured by reference to clearly established law. The United States Supreme Court offers the following guidance:

> Qualified immunity balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (Kennedy, J., dissenting) (citing *Butz v. Economou*, 438 U.S. 478, 507 [](1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The Court may address either prong first. *Id.* at 236. If no reasonable fact finder could answer both questions affirmatively, the defendant is entitled to qualified immunity. *Nance v. Sammis*, 586 F.3d

604, 609 (8th Cir. 2009).  If either element is not satisfied, there is no necessity for further inquiries concerning qualified immunity.  In this case, Councilman Spatz is entitled to Qualified Immunity.  The sole allegation against Spatz, other than that Spatz voted to recommend the denial of Harrington's liquor license, is in paragraph 15:  "Spatz wrote Plaintiff an email claiming his liquor license application would stand a better chance if he sold his web sites first, followed by an announcement to the media about the sale."  Filing No. 4, at 4, ¶ 15.  The Court finds that Councilman Spatz's communication to Harrington and his voting to recommend denial were objectively reasonable and did not violate plaintiff's constitutional rights, and Spatz is entitled to Qualified Immunity.  Therefore, the Court will grant the City Defendants' motion to dismiss Harrington's claims in his individual capacity.

Also, the Court finds Councilman Spatz is entitled to Sovereign Immunity for two reasons.  First, the Nebraska Political Subdivisions Tort Claims Act preserves Sovereign Immunity for its employees who deny any license.  Neb. Rev. Stat. § 81-8,219(8).  Second, Spatz did not actually deny the license.  As a city councilman, Spatz did not have the authority to grant or deny Harrington's application, and so Harrington's allegations

lack foundation.  Therefore, the Court will grant the defendants' motion to dismiss Harrington's claims in his official capacity.

E.   THE OFFICERS

The defendants seek to dismiss the remaining claims against officer Fosler and Chief Peschong in their individual capacities because Harrington failed to allege sufficiently detailed allegations of those defendants' conduct.  Filing No. 16, at 7-8.  Although "[o]fficers are allowed to make reasonable errors and this immunity provides 'ample room for mistaken judgments,'" the Court finds that the allegations contained within Harrington's amended complaint satisfy the procedural requirements to overcome a motion to dismiss and that the parties should proceed to discovery.  Therefore, the defendants' motion to dismiss officer Fosler and Chief Peschong will be denied at this time.

Similarly, Tom Casady was the chief of police through 2011, and he was the head of the police department during relevant periods in Harrington's complaint.  For the same reasons noted above, the Court will deny the defendants' motion to dismiss former Chief Casady at this time.

IT IS ORDERED:

1) The motion of the Nebraska Liquor Control Commission and Hobert Rupe (Filing No. 13) is denied as moot pursuant to the Court's order, Filing No. 21.

2) The plaintiff's motion to amend his complaint (Filing No. 17) is denied.

3) The motion (Filing No. 15) of Tom Casady, Jim Peschong, John Spatz, Russell Fosler, and the City of Lincoln is denied in part and granted in part.

4) All claims against the City of Lincoln and Councilman Spatz are dismissed.

5) The motion to dismiss Tom Casady, Jim Peschong, and Russell Fosler is denied at this time.

6) The following Causes of Action are dismissed as to all defendants: Fifth, Sixth, Eighth, Ninth.

DATED this 6th day of February, 2015.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court